MALLIN, Appellee,

v.

MALLIN, Appellant.

[Cite as *Mallin v. Mallin* (1995), 102 Ohio App.3d 717.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 67448.

Decided May 8, 1995.

718

*John D. Sutula,* for appellee.

*Christopher J. Mallin, pro se.*

*Sandra L. Walker,* Assistant County Prosecuting Attorney, for Cuyahoga Support Enforcement Agency.

PATTON, Chief Judge.

Defendant-husband Christopher Mallin and plaintiff-wife Deborah Mallin were divorced in 1988. As relevant to the issues in this appeal, the domestic relations court ordered the husband to pay $40 per week in child support for his three minor children. The court subsequently corrected that order to require the husband to pay child support of $40 per week per child.[1] The court did not issue any orders relating to the payment of spousal support, but it did order the husband to pay as further alimony the sum of $15,000 as and for his contribution to the wife's attorney fees.

The wife retained the marital residence, which was encumbered by a first mortgage held by a savings and loan and a second mortgage held by the husband's mother and cosigned by the parties. The savings and loan commenced a third-party action and foreclosed on the property, so the wife sold it to pay off the debt. At the same time, the husband's mother filed an answer and cross-

---

1. The husband objected to the correction of the child support order and appealed. A panel of this court affirmed, finding Civ.R. 60(A) permitted the domestic relations court to correct the obvious clerical error in its judgment entry. See *Mallin v. Mallin* (Apr. 16, 1992), Cuyahoga App. Nos. 60014 and 60668, unreported, 1992 WL 79847.

claim in the third-party action. She received a judgment for $20,975.53, plus per diem interest.

In November 1990, the husband's mother, with the assistance of the husband, who is a licensed attorney, attempted to execute on her judgment against the wife by garnishing the wife's wages. The wife initiated bankruptcy proceedings the following month. Among the debts discharged by the bankruptcy were the promissory note to the husband's mother and her attorney fees. At the time she filed her petition for bankruptcy, she owed $32,515.59 on the promissory note.[2] In addition, she owed her attorney $35,000.

The wife then commenced execution in the Bedford Municipal Court on her $15,000 judgment for attorney fees. It appears from the hearing transcript that the wife had revived the debt to her attorney when she retained him to defend against various motions filed by the husband.

In 1992, the Cuyahoga Support Enforcement Agency ("CSEA") intervened on behalf of the wife and filed a motion to determine and liquidate child support arrearages. The court heard the motion and ordered the husband to pay an additional $108.33 per month toward arrearages of $11,512.92. Additionally, the court ordered the husband to maintain with the clerk of court a cash bond of $1,020. The husband later forfeited the bond as a result of his failure to stay current on his child support obligations. The court then ordered the husband to replenish the bond.

The husband filed the following motions relating to these court orders: (1) a motion for a discharge of the $15,000 judgment to pay the wife's attorney fees; (2) a motion for a temporary restraining order delaying execution on the $15,000 judgment for attorney fees; (3) a motion to modify child support; and (4) a motion for relief from the court's order that the husband replenish the cash bond he forfeited when he failed to stay current on his child support obligations.

The motions were heard by a referee, who issued findings of fact and conclusions of law which recommended that all the husband's motions be denied. The husband filed objections to the referee's report, complaining that the referee (1) failed to comply with the requirements of R.C. 3113.215(B)(3) when considering the motion to modify child support; (2) failed to consider the wife's bankrupt-

---

2. The husband and his mother filed a complaint in the United States Bankruptcy Court for a determination of dischargeability of the debt on the promissory note. The divorce decree awarding the wife the marital property ordered her to pay and hold the husband harmless on any mortgages. The husband argued that the wife's obligation to hold him harmless was nondischargeable under the Bankruptcy Code since it was intended as alimony, maintenance or support. The bankruptcy court held that the obligation to hold the husband harmless was not alimony and found the obligation a dischargeable debt under Section 523(a)(5), Title 11, U.S.Code. See *In re Mallin* (N.D.Ohio 1992), 137 B.R. 673.

cy as a factor favoring modification of child support; and (3) failed to consider that enforcing that part of the divorce decree ordering him to pay $15,000 to the wife for attorney fees, despite that debt having been discharged in bankruptcy, amounted to a forced "contribution" despite there being no legal obligation for the wife to repay that debt. The trial court adopted the referee's findings and recommendations over the husband's objections. This appeal followed.

## I

The husband first argues that enforcement of the order requiring him to pay $15,000 for his wife's attorney fees constitutes an invalid contribution since the wife's bankruptcy removed any obligation to pay those fees. He maintains that the wife's discharge of attorney fees in bankruptcy proceedings also constitutes a discharge of his obligation to pay those fees under the divorce decree. The referee rejected this argument because the order to pay the wife's attorney fees was intended as support alimony. Since alimony is a nondischargeable debt under the Bankruptcy Code, the referee would not allow the husband to escape paying an obligation that he himself could not discharge had he been in the wife's position.

The trial court made the following order in the divorce decree:

"11. As further alimony, [husband] shall pay to [wife] the sum of $15,000.00 as and for his contribution to her attorney fees, for which judgment is rendered and execution may issue."

The husband's arguments that payment of the now discharged attorney fees is a contribution are unfounded. Contribution is an equitable doctrine in which the law implies a contract between the parties. *Travelers Indemn. Co. v. Trowbridge* (1975), 41 Ohio St.2d 11, 70 O.O.2d 6, 321 N.E.2d 787, paragraph two of the syllabus; *Baltimore & Ohio RR. Co. v. Walker* (1888), 45 Ohio St. 577, 16 N.E. 475, paragraph three of the syllabus. Contribution is an appropriate remedy where both parties are liable for a debt and its payment by one party discharges the liability and relieves the other party from the burden. *Robinson v. Boyd* (1899), 60 Ohio St. 57, 59, 53 N.E. 494, 494.

On the facts presented in this case, common-law principles of contribution simply do not apply. The referee correctly stated that the judgment relating to attorney fees was intended as alimony. Hence, the husband's debt to the wife is separate and distinct from the debt the wife owed to her attorney. The husband's obligation to pay alimony continues to exist regardless of whether the wife's debt to her attorney is discharged in bankruptcy. Consequently, his debt to the wife has not been discharged in a manner contemplated by common-law principles of contribution.

■ Finally, the husband argues that equitable principles of unjust enrichment dictate that he be relieved of his obligation to pay the attorney fees. We reject this argument because, in essence, the husband argues he can delay paying his share of attorney fees until such time as his wife is forced to file for bankruptcy, and then escape his obligation to pay those attorney fees because her debt to the attorney, although occasioned in part by his refusal to pay, is discharged. We are aware of no equitable principles that would permit such a result. The first assignment of error is overruled.

## II

The husband next argues that the trial court erred by refusing to modify his child support obligations. He maintains that (1) the court erred by adopting the referee's report and recommendations which did not comply with the requirements of R.C. 3113.215, (2) the court failed to make any determination of his income, and (3) the court erred when it computed the wife's total gross income. In addition, he argues that the court erred by failing to consider the wife's bankruptcy and discharge of debts as factors favoring modification.

■ R.C. 3113.215 sets forth the procedures which the domestic relations court must follow in calculating child support. The calculation of support must be made in accordance with the basic child support schedule set forth in R.C. 3113.215(D) and the applicable model worksheet in R.C. 3113.215(E) or (F). *Rock v. Cabral* (1993), 67 Ohio St.3d 108, 110, 616 N.E.2d 218, 220–221. If the court makes the proper calculations, the amount shown on the worksheet is "rebuttably presumed" to be the correct amount of child support due. See R.C. 3115.215(B)(1); *Rock v. Cabral, supra.* Court-ordered deviations from the schedule and worksheet are not permitted absent full and strict compliance with the requirements of R.C. 3113.215(B)(1)(a) and (b). *Marker v. Grimm* (1992), 65 Ohio St.3d 139, 141, 601 N.E.2d 496, 497–498. Our review of factual determinations underlying the trial court's decisions concerning child support is limited to a determination of whether the court abused its discretion. *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028, 1030–1031; *Rock v. Cabral, supra,* 67 Ohio St.3d at 112, 616 N.E.2d at 222.

Both parties submitted income and expense sheets, as well as a health insurance investigative form and a proposed child support worksheet. The wife is a school teacher and councilwoman for the city of Bedford Heights. The referee found the wife's total gross income for 1993 was $48,756 plus $150 per month for mileage from Bedford Heights.

The referee found the husband's income at issue for purposes of his motions. The husband is an attorney and licensed real estate broker. He submitted a 1992

federal income tax return showing an adjusted gross income of $16,280.36. The referee found that figure questionable since the husband admitted he prefers to deal with cash and avoids depositing money into accounts in order to escape Internal Revenue Service scrutiny. Although the husband uses a computer software income and expense program, he failed to provide the referee with any data to substantiate his business expenses. The referee also found that the husband may have inflated losses from two rental properties. His income tax return showed that he had collected rents, but that the rental income was exceeded by repair expenses. Notwithstanding these figures on the income tax return, he testified that he waived rent in return for repairs. The referee found that the stated loss on the income tax return was not credible. The referee also considered other evidence which belied the husband's assertions of pecuniary need. For example, he testified that he had traveled and made a $3,000 donation to his church.

The referee made the following findings of fact:

"The Referee therefore finds that based on the cash nature of Defendant's business in that he receives his fees from his clients in cash and the fact that he keeps no books and deposits no money into his checking account so that the Court could in some way ascertain what type of receipts the Defendant is receiving from his business, the Defendant's general testimony as to his income is not credible * * *."

Based upon these findings, the court determined the husband's income to be "at least $26,534 per year which would result in a calculation of child support of $35.87 per week per child as opposed to $40.00 per week per child which is the current order." The referee noted this figure was within $.13 of a ten-percent deviation, which would constitute a change in circumstances.

## A

The husband complains the referee erred by increasing his gross income due to evidence that he had taken two trips and made a donation to his church. He argues that the trips were inexpensive and he made the donation to his church in 1989, before the court had clarified the initial support order and at a time when he was current in paying support.

We find that the court did not abuse its discretion by adopting the referee's findings of fact. Clearly, the referee found little to credit in the husband's testimony. The husband freely admitted he avoided using financial accounts in order to elude federal tax liens. He failed to substantiate his claims with documentation. What documentation he did provide (for example, his rental

income and expenses) tended to discredit his testimony. These facts are substantiated in the record and will not be disturbed. *Rock v. Cabral, supra.*

Our review of the child support worksheet shows the referee fully complied with R.C. 3113.215, and the court did not abuse its discretion by adopting the referee's findings of fact and conclusions of law.

### B

■ The husband next contends that the court erred by failing to make any determination as to his gross income. He maintains the absence of records for tax year 1993 should have required the court to consider the next most recent year for which documentation was available, tax year 1992. In 1992, the husband claimed gross income of $14,400.

It should be noted that at the time the husband's motions were heard, the referee also heard CSEA's motions to compel the husband to provide documentation and its motions for sanctions. Although the husband did provide some of the ordered material, he admitted that he failed to provide any of the rental expenses listed on his Schedule E and failed to verify the expenses listed on Line 21 of his Schedule C for the 1992 Form 1040. However, because the husband substantially complied with the discovery order, the referee recommended no sanctions be imposed.

Without a current tax return, the referee determined the husband's gross income in large part by using his 1992 tax return and adding to his income chargebacks for expenses which he failed to document. For example, he sought to deduct attorney fees he paid to another attorney as an expense for his own legal practice when the other attorney represented him in connection with his refusal to take a breathalyzer test. He also listed expenses for repairs and maintenance to his office, even though he failed to document those expenses and admitted he rents the office. He also sought a deduction for self-employment tax even though he admitted he did not make any payments on that tax.

Based on these facts as well as others in evidence, we find that the trial court did not abuse its discretion by refusing to permit the husband to claim deductions for expenses he did not incur.

### C

Finally, the husband claims that the court erred by refusing to offset his child support obligations with savings the wife received when (1) her debt on the promissory note to the husband's mother was discharged in bankruptcy, and (2) her parents subsidized her living expenses by allowing her to live in a house they owned for a sum less than the current market value.

1

█ The parties cosigned the note on the marital residence in 1977. As part of the divorce decree, the wife was ordered to hold the husband harmless on all obligations arising from the marital residence. The bankruptcy court discharged those obligations, presumably leaving the husband solely liable on the note.

The referee found the wife had made some payments on the note in addition to monies paid as a result of the garnishment prior to the bankruptcy. The husband also testified that he had paid his mother some money; however, he could not substantiate what amount he or the wife had paid. Because of this failure of proof, the referee could not determine what amount remained on the note. The referee concluded that she could not reassess a debt that had been discharged under federal bankruptcy law.

We agree that the court did not abuse its discretion when it adopted the referee's recommendation to deny the motion to modify child support since the husband failed to show what amount was owed on the note. Significantly, the referee found that the husband "has not actually made any payments on that debt. [H]e cannot now come in and argue that he should be reimbursed for something that he has never paid or has not paid, by his testimony, since 1989 * * *." On these facts, there has been no change in circumstances because the husband has not assumed the debt to the mother.

█ Finally, we would add that the court has no authority to offset current child support against a property division. The bankruptcy court found the wife's assumption of the debt to the mother constituted a division of property, not alimony. The court stated:

"The entry is replete with indications the domestic relations court intended to require [husband] to assume the bulk of the marital debt due to his inappropriate and misguided actions. It is patently inconceivable that [wife's] duty to ultimately hold him harmless on the second mortgage on her and the children's residence can be construed as in the nature of alimony, maintenance or support." *In re Mallin,* 137 B.R. at 678.

Since that part of the divorce decree was a division of property, the court lacked continuing jurisdiction to modify this division of marital assets. *Wolfe v. Wolfe* (1976), 46 Ohio St.2d 399, 75 O.O.2d 474, 350 N.E.2d 413; *Clarridge v. Clarridge* (Sept. 23, 1994), Union App. No. 14–94–10, unreported, 1994 WL 521189.

2

█ Finally, the husband argues that the court ignored evidence that the wife's parents were subsidizing her housing costs by allowing her to live in a house they owned for less than fair market value. He contends his support

obligation should be reduced by an amount in proportion to that amount the wife saves in housing costs.

The referee addressed this argument as follows:

"As to [husband's] arguments for deviation, the first being that the [wife] does not pay a fair-market value for the residence in which she lives and thus [husband] deserves a deviation, the Referee finds that the [wife] in this matter is working two (2) jobs, supporting three (3) children and has not received any child support with the exception of the cash bond for most of the year 1993, and that if the [wife's] parents wish to subsidize her rent by not charging her the fair-market value of rent for her residence that is between the [wife] and her parents and not a matter for deviation appropriate to this Court."

The trial court did not abuse its discretion by adopting the referee's findings of fact and conclusions of law on this point. The referee could reasonably consider the husband's failure to pay child support as a factor weighing against modification, despite the wife's savings in her housing arrangements. Certainly, the failure to stay current on child support, including arrearages, is a factor that would persuade the court to adopt the referee's recommendations. Since these considerations were neither arbitrary nor unreasonable, we find no abuse of discretion. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140.

Accordingly, the assignments of error are overruled.

*Judgment affirmed.*

NUGENT and KARPINSKI, JJ., concur.