JOURNAL ENTRY AND OPINION
In Case No. 75421, petitioner-appellant Lurlia A. Oglesby (hereafter "mother") contends that the Cuyahoga County Juvenile Court erred in determining the amount of child support respondent-appellee Christopher C. Branche, M.D. (hereafter "father"), should pay to support their minor child, Afton Branche. In Case No. 75422, the father contends that the Juvenile Court erred in ordering him to direct his child support payments to the mother instead of directly to the private school at which the child is enrolled. We conclude that neither party's contention is well taken, so we affirm the trial court's judgment in part. But because the trial court did not enter in its journal the actual amount of the father's child support obligation, we reverse the judgment in part and remand the matter to the trial court with instructions to enter that amount for the record.
The record reflects that Afton Branche was born on September 26, 1986. Afton's parents never married, but the father acknowledged paternity and the Cuyahoga County Probate Court entered an order legitimizing Afton in 1987. The father voluntarily paid child support to the mother for a time, but a dispute eventually arose and the mother filed for a support order in the Juvenile Court in June 1995. The Juvenile Court entered a temporary child support order requiring the father to pay current support to the mother in the amount of $1,500 per month beginning September 1, 1995.
After further proceedings, a juvenile court magistrate decision, on August 6, 1996, found that the parents' combined gross income was $333,928. The magistrate ultimately determined that the father's annual child support obligation was $18,344 so long as the father was financially responsible for Afton's private education at Laurel School and was required to incur the expense of accompanying Afton to and from California for extended visits with her father. Both parents filed objections to the magistrate's decision. On the father's motion, the magistrate issued findings of fact and conclusions of law on February 5, 1997.
On September 10, 1998, the court modified the magistrate's decision and ordered that the father was solely entitled to claim the child as a dependent for federal income tax purposes. In a separate order entered on the same date, the court additionally modified the magistrate's decision to order that payments paid by the father to Laurel School as tuition would cease to be credited against child support payments and that such sum would henceforth be paid by the father to the mother as child support. The court further ordered the mother to indemnify and hold the father harmless on any outstanding tuition obligations of the father to Laurel School upon his present contract with the school. Both orders added that the court approved all other findings and decisions made by the magistrate that had not been modified by the September 10, 1998 orders and adopted those findings and decisions as orders of the court.
Both parties appealed from the court's judgment. The mother's first two assignments of error are related and will be addressed jointly:
 I. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN DETERMINING THE AMOUNT OF THE GROSS INCOME OF THE DEFENDANT-APPELLEE CHRISTOPHER C. BRANCHE, M.D. AND THE COMBINED GROSS INCOME OF THE PARTIES.
 II. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN DETERMINING THE AMOUNT OF CHILD SUPPORT TO BE PAID BY THE DEFENDANT-APPELLEE CHRISTOPHER C. BRANCHE, M.D.
These assignments of error are not well taken.
When establishing a child support order, the trial court must apply the Child Support Guidelines under R.C. 3113.215. DePalmov. DePalmo (1997), 78 Ohio St.3d 535, syllabus at para. 1. Under R.C. 3113.215(B)(1), the court must (1) calculate the amount of the obligor's child support obligation in accordance with the basic child support schedule, the applicable worksheet, and the other provisions of R.C. 3113.215; (2) specify the support obligation as a monthly amount due; and (3) order the support obligation to be paid in periodic increments as it determines to be in the best interest of the children.
In Marker v. Grimm (1992), 65 Ohio St.3d 139, the court held that "[t]the terms of R.C. 3113.215 are mandatory in nature and must be followed literally and technically in all material respects." Id., syllabus at para. 2. When calculating the amount of an obligor's child support obligation under R.C. 3113.215, the trial court must complete a child support computation worksheet and make it a part of the trial court's record. Marker v. Grimm,supra, syllabus at para. 1. "Any court-ordered deviation from the applicable worksheet and the basic child support schedule must be entered by the court in its journal and must include findings of fact to support such determination." Id., syllabus at para. 3.
In those circumstances when the combined gross income of both parents exceeds one hundred fifty thousand dollars per year, R.C.3113.215(B)(2)(b) directs:
 If the combined gross income of both parents is greater than one hundred fifty thousand dollars per year, the court * * * shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents. * * * [T]the court * * * shall compute a basic combined child support obligation that is no less than the same percentage of the parents' combined annual income that would have been computed under the basic child support schedule and under the applicable worksheet * * * for a combined gross income of one hundred fifty thousand dollars, unless the court or agency determines that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount and enters in the journal the figure, determination, and findings.
The trial court has discretion when calculating this obligation, and its judgment will not be disturbed unless that discretion was abused. See Frazier v. Daniels (1997), 118 Ohio App.3d 425; Schultz v. Schultz (1996), 110 Ohio App.3d 715. See, also, Pauly v. Pauly (1997), 80 Ohio St.3d 386, 390; Booth v.Booth (1989), 44 Ohio St.3d 142, 144. If the court makes the proper calculations, the amount shown on the worksheet is rebuttably presumed to be the correct amount of child support due. R.C. 3113.215(B)(1); Mallin v. Mallin (1995), 102 Ohio App.3d 717,722.
In the case at hand, mother's first assignment of error mistakenly asserts that a worksheet was not made a part of the record, and, therefore, the basis for the combined gross income of $333,928 cannot be ascertained. However, a worksheet was expressly included in the record as an attachment to the August 6, 1996 magistrate's decision. The worksheet reflects the father's adjusted annual gross income as $301,098, representing 90% of the parents' combined gross income, and the mother's adjusted annual gross income as $32,830, representing 10% of the combined gross income. We are satisfied that the lower court completed a child support computation worksheet in accordance with R.C. 3113.215 and made it a part of the record.
We are likewise satisfied that the court's calculation of the father's income is supported by the record. The father's W-2s showed his income as follows:
 1993 $338,356 1994 334,006 1995 279,019
The father testified that his declining income was the result of reduced reimbursements from managed health care organizations. His income as of the first quarter for 1996 totaled $106,053, but he testified that was not an accurate measure of his income for the rest of the year because of payment practices.
Using the father's 1995 income as the basis for determining his annual gross income from employment, the magistrate found the father's annual gross income to be $279,019. The magistrate added the value of $30,000 reflecting the father's pension and thereby calculated the father's total annual gross income at $309,019.
For her appeal, the mother asserts that the father's pension should have been included in calculating his child support obligation, pursuant to R.C. 3113.215(A)(2). But as we have noted, the worksheet before us reflects that the pension was in fact included. The mother has not otherwise shown that the court abused its discretion in accepting father's annual gross income to be $279,019. Accordingly, we overrule the mother's first assignment of error.
The mother's second assignment of error contends that the court erred in calculating the father's annual child support obligation, before adjustments under R.C. 3113.215(B)(3), to be $29,482. We cannot agree. The worksheet reflects that based on the parents' combined gross income of $333,928, the child was entitled to support in the amount of $33,393 per year. The court further found day-care expenses as after-school care, in the amount of $3,950, and medical health insurance premiums, in the amount of $1,764, resulting in an aggregate value of $5,714, so that the total combined child support obligation came to $39,107. The father's share of that obligation was $35,196. After subtracting the sum of $5,714 paid by the father, the court determined the father's actual annual obligation to be $29,482. We find no error in the court's calculations, and the mother has not shown that the court abused its discretion.
The mother's third and fourth assignments of error are likewise related and state:
 III. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN DETERMINING THAT A DEVIATION FROM THE PRESUMPTIVE AMOUNT OF CHILD SUPPORT IS WARRANTED UNDER THE CIRCUMSTANCES OF THIS CASE.
 IV. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN DETERMINING THAT THE MOTHER SHALL HOLD FATHER HARMLESS ON TUITION OBLIGATIONS [SIC] LAUREL SCHOOL
These assignments of error are not well taken.
Under R.C. 3113.215(B)(2)(c), the court may not deviate from the amount of child support that would otherwise result from the use of the basic child support schedule and applicable worksheet unless both of the following apply:
 (i) The court, after considering the factors and criteria set forth in division (B)(3) of [R.C. 3113.215], determines that the amount calculated pursuant to the basic child support schedule and pursuant to the applicable worksheet * * * would be unjust or inappropriate and would not be in the best interest of the child;
 (ii) The court enters in the journal the amount of child support calculated pursuant to the basic child support schedule and pursuant to the applicable worksheet * * * its determination that that amount would be unjust or inappropriate and would not be in the best interest of the child, and findings of fact supporting that determination.
See, also, Marker v. Grimm, supra.
In this case, the lower court expressly found that it would be "unjust and inappropriate for the father to pay $29,482 per year in child support" because he had "voluntarily established a consistent history of payment for the child's tuition at a private school and [provided] for the child's expenses to visit and maintain a beneficial relationship" with him in California. The worksheet reflects that husband was credited for the aggregate sum of $11,138, reducing the amount of child support payable directly to the mother to $18,344 per year so long as the father remained financially responsible for Afton's private schooling and so long as he was required to accompany her for extended visits to and from California.
In finding that annual child support in the amount of $29,482 would be unjust, inappropriate, and not in the child's best interest, the court cited two factors under R.C.3113.215(B)(3):[1]
 (d) Extended times of visitation or extraordinary costs associated with visitation, provided that this division does not authorize and shall not be construed as authorizing any deviation from the schedule and the applicable worksheet * * * or any escrowing, impoundment, or withholding of child support because of a denial of or interference with a right of companionship or visitation granted by court order;
* * *
 (j) Significant in-kind contributions from a parent, including, but not limited to, direct payment for lessons, sports equipment, schooling, or clothing * * *.
The court found that the father has paid for Afton's private schooling. The 1995/1996 tuition was $9,638 and the 1996/1997 tuition was to be $9,880. The court further found that the father incurred approximately $1,500 per year in air fares so that he could accompany her on her flights to and from California. We think the court could reasonably find that enabling Afton to continue her private education and to visit her father was in Afton's best interest, and that crediting the father's support obligations for these expenses, therefore, was not unjust, inappropriate, or contrary to Afton's best interest. We find no abuse of discretion in the court's determination of the father's child support obligations, so we overrule the mother's third assignment of error.
The mother's fourth assignment of error complains that the court erred in ordering that she indemnify and hold the father harmless for any outstanding tuition obligations. The court did so only after modifying the magistrate's decision so that the father's payments for private schooling would cease to be credited against child support payments and those sums would henceforth be paid by the father to the mother as child support. In effect, the father would no longer pay the school directly but instead would pay the mother, through the Cuyahoga County Support Enforcement Agency, who in turn would pay the school. Since the father was responsible to the school for Afton's tuition, the court's order reasonably required the mother to indemnify and hold the father harmless for any remaining tuition obligations. The mother gives us no reason to find this an abuse of discretion, so we overrule her fourth assignment of error.
For his cross-appeal, the father raises this assignment of error:
 THE TRIAL COURT ABUSED ITS DISCRETION BY MODIFYING THE DECISION OF THE MAGISTRATE TO PROVIDE THAT THE FATHER SHOULD PAY THE AMOUNT OF DIRECT PAYMENTS BEING MADE BY THE FATHER FOR THE CHILD'S PRIVATE SCHOOL EDUCATION TO THE MOTHER AS CHILD SUPPORT AND RELIEVING THE FATHER OF THE OBLIGATION TO MAKE FURTHER PAYMENTS TO THE CHILD'S SCHOOL.
The father's assignment of error is not well taken.
The father complains that while he previously paid Afton's tuition directly, the court's order now requires him to include that tuition within the child support that he must pay to the mother through the Cuyahoga County Support Enforcement Agency. While admittedly more circuitous, this order does not reveal any abuse of discretion. The order caused no material change in the father's child support obligation. The order, in fact, provided a better mechanism to account for the father's support payments. And, as we noted in reference to the mother's fourth assignment of error, the court ordered the mother to indemnify and hold the father harmless for any outstanding tuition obligations.
Because we cannot find that the court acted unreasonably, unconscionably, or arbitrarily, we find no abuse of discretion. The father's assignment of error is hereby overruled.
Although we find the parties' assignments of error are not well taken, Marker v. Grimm, supra, requires us to reverse the judgment in part and remand this matter to the trial court for the limited purpose of calculating the actual amount of the father's child support obligation in light of the court's September 10, 1998 modification orders. Before those orders were entered, the magistrate adjusted the father's annual obligation from $29,482 to be $18,344, that is, $1,528.67 per month, so long as the father was directly responsible for Afton's private education and for travel expenses when a parent was required to accompany Afton on extended visits. The court's September 10, 1998 limited modification of the magistrate's decision discontinued the father's child support credit for Afton's private education and ordered the father to pay those sums henceforth as child support. It does not appear, however, that the court quantified the amount of the father's annual child support obligation after that modification. Nor did the court enter the adjusted amount of the father's annual or monthly child support obligation in its journal.
Marker v. Grimm, supra, commands literal and technical compliance with R.C. 3113.215 in all material respects and demands that the trial court enter any deviation from the applicable worksheet in its journal. Because the court did not enter in its journal the amount of the father's annual or monthly child support obligation following the September 10, 1998 modification, we reverse the judgment in part and remand this matter to the trial court with instructions to enter in its journal the amount of the father's child support obligation.
The judgment is accordingly affirmed in part and reversed in part. The matter will be remanded for further proceedings consistent with this opinion.
It is ordered that each party shall bear their own costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Juvenile Court Division of the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TERRENCE O'DONNELL, P.J., and TIMOTHY E. McMONAGLE, J., CONCUR.
 ___________________________ DIANE KARPINSKI JUDGE
[1] The magistrate's conclusions of law cite the factors under "R.C. 3113.215(B)(3)(b) and (j)." (Emphasis added.) R.C.3113.215(B)(3)(b) permits a deviation for "[e]xtraordinary obligations for minor children or obligations for handicapped children who are not stepchildren and who are not offspring from the marriage or relationship that is the basis of the immediate child support determination." Because that section has no apparent application here, we assume that this was a typographical error and the magistrate meant to cite R.C.3113.215(B)(3)(d) but mistakenly cited R.C.3113.215(B)(3)(b).