OPINION
Defendant-appellant Doreen A. Worch appeals from a judgment ordering her to pay her former husband, plaintiff-appellee David L. Worch, $240.25 per month in child support. Doreen argues that the trial court erred or abused its discretion by using the income figures reported on David's tax returns for 1995 and 1996 for purposes of calculating the parties' child support obligations, because the evidence she presented, which included expert testimony from a certified public accountant, demonstrated that David had substantially understated his income for those years. Doreen also argues that the trial court erred or abused its discretion by not using a period greater than two years in averaging David's annual income for purposes of calculating child support, where the income figure for one of the two years was unrepresentative of David's income. Doreen further argues that the trial court erred by not using the same figure for David's income that it had utilized in a separate child support modification proceeding involving a child that David had with his other former wife, and by accepting as true David's assertion in his affidavit that his child support obligation for that child was $294.79 per month.
We conclude that the trial court did not abuse its discretion by using the income figures reported on David's 1995 and 1996 tax returns to calculate the parties' child support obligations because Doreen failed to demonstrate that David had significantly understated his income for those years. We also conclude that the trial court did not err by refusing to use the same figure for David's income that had been used in a separate child support modification proceeding involving a child that David had with his other former wife. However, we conclude that the trial court did abuse its discretion by using an averaging method of only two years in determining David's annual income for purposes of calculating child support because one of the two years used was substantially unrepresentative of David's annual income. We also conclude that the trial court erred by not remanding the matter to its magistrate to resolve a disputed amount concerning the monthly amount of David's child support obligation for his other child. Accordingly, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.
 I
David and Doreen Worch were granted a dissolution of marriage in May, 1986. They had three children during their nine-year marriage: Jeremy, born December 5, 1981; Christopher, born September 30, 1983; and Stacie, born December 9, 1984. The parties were initially given joint custody of their three children. However, this arrangement was terminated in April, 1991. At that time, Doreen was given sole custody of the children, and David was ordered to pay Doreen $361 per month in child support. In 1992, David's child support obligation was increased to $103.19 perweek, because the children were not spending the summer with him as contemplated under the prior order.
On August 17, 1995, Jeremy began living with his father. In May, 1996, Doreen filed a motion, requesting, among other things, a modification of child support. In September, 1996, Doreen filed a second motion, requesting that the trial court adopt her proposed Shared Parenting Plan with respect to Jeremy. In November, 1996, David filed a motion requesting that the trial court designate him as Jeremy's residential parent and legal custodian, and grant him an allowance for Jeremy's support, made retroactive to August 17, 1995.
The motions were referred to a magistrate. An initial hearing was held on April 16, 1997. The hearing was continued to allow Doreen to collect discovery material concerning David's income. David's counsel withdrew from the case in May, 1997, and the case was continued once more, to allow David to obtain new counsel. In December, 1997, David's new counsel filed a motion similar to the one filed by his predecessor. Final hearings on the parties' motions were held on March 23, 1998, and May 13, 1998.
The majority of the testimony presented at the hearings dealt with the amount of annual income to be attributed to David for purposes of calculating child support. Doreen contended that David had understated his income from his farming operations to the Internal Revenue Service while they were married, and was continuing to do so. To prove her point, Doreen presented the expert testimony of John Bosse, a certified public accountant. Citing Bosse's testimony, Doreen contended that David had failed to report $37,717 in income on his 1995 tax return, and $52,895 on his 1996 tax return, and that, therefore, those amounts should be added to David's Adjusted Gross Income for 1995 and 1996, giving him an average income for those two years of $56,441.
The magistrate disagreed, finding that the income reported on David's 1995 and 1996 income tax returns, adjusted for depreciation, should be used to calculate child support. Consequently, the magistrate found that David's income for 1995 and 1996 was $28,092 and $2,273, respectively, after adding depreciation "back in," and that the average of David's income for those two years, or $15,182.50, should be used in calculating child support. In rejecting Doreen's request that David's annual income be imputed to be $56,441, the magistrate noted that Doreen's expert witness acknowledged that not all of the amounts he used in determining the amount of cash available to make deposits and pay bills constituted income that had not been taxed.
The magistrate completed a "preliminary" child support worksheet, indicating that Doreen should pay David $156.97 per month for child support. Noting that no evidence had been presented regarding Doreen's present insurance costs or David's child support obligation for his child from his other former marriage, the magistrate instructed the parties to provide both of these numbers before final entry, so that child support could be calculated more accurately.
Doreen objected to the magistrate's decision, arguing that the magistrate had erred in determining David's income for purposes of calculating child support. On October 7, 1998, the trial court issued a judgment entry, overruling Doreen's objection to the magistrate's decision, and adopting the magistrate's decision as its order.
Doreen appealed the trial court's October 7th judgment entry to this court. On May 11, 1999, this court issued a Show Cause Order requiring Doreen to explain why her appeal should not be dismissed for lack of a final appealable order, because it appeared from the record that the parties had failed to comply with the magistrate's instructions to provide "the correct amounts for health insurance and child support paid for other children so that a more accurate child support worksheet c[ould] be completed." After Doreen filed a response, this court, on June 11, 1999, issued a decision and entry dismissing Doreen's appeal for lack of jurisdiction due to a lack of a final appealable order.
On June 16, 1999, Doreen filed a Motion to Amend Judgment, requesting the trial court to amend its October 7, 1998 judgment entry. The trial court ordered both parties to submit information regarding their present health insurance costs for coverage which included their minor children, and ordered David to submit proof of his child support obligations for his other child. The trial court ordered the parties to "submit this information in affidavit form." After both parties submitted affidavits, the magistrate found that Doreen's health insurance for the children costs $3,461 per year, and that David's child support obligation for his other child amounted to $3,537 per year. Consequently, the magistrate recommended that Doreen pay David $240.25 per month in child support.
Doreen filed objections to the magistrate's decision, arguing that in computing David's child support obligation for his other child, the magistrate had used a higher figure for David's annual income ($23,899) than she had used in computing David's child support obligation for her (Doreen's) children. Doreen also argued that the magistrate erred by accepting David's assertion, made in his affidavit, that his child support obligation for his other child was $294.79 per month. On October 7, 1999, the trial court issued a judgment entry, overruling Doreen's objections, and adopting the magistrate's decision as its final order.
Doreen appeals from the trial court's October 7, 1999 judgment entry.
 II
Doreen's First Assignment of Error states:
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ITS DETERMINATION OF [DAVID'S] ANNUAL EARNINGS FOR CHILD SUPPORT PURPOSES.
Doreen argues that the trial court erred in determining that David's 1996 income was $2,273. She asserts that the trial court should have relied upon the "unrefuted testimony" of her expert witness, Bosse, and imputed to David additional income of $37,647 and $52,895 in 1995 and 1996, respectively. We disagree.
The decision whether to impute income to a parent for purposes of calculating child support is a factual determination, and the trial court's decision will not be reversed on appeal absent an abuse of that discretion, i.e., that the decision is unreasonable, arbitrary, or capricious. See Mallin v. Mallin
(1995), 102 Ohio App.3d 717, 722.
Bosse testified about the method he used to determine if David's reported income was representative of his actual income. First, Bosse examined David's 1995 tax return to determine the amount of "cash available to be put into a bank deposit to pay bills," arriving at a figure of $179,296. He then examined David's business records for 1995, including his bank statements and grain checks, again, to determine the amount of cash available to pay bills, this time arriving at a figure of $217,143. A comparison of the two numbers revealed that David's business records indicated that he had $37,647 more in cash available to pay bills than his 1995 income tax return indicated. Bosse performed a similar analysis for 1996, finding that David's 1996 business records indicated that he had $52,895 more in cash available to pay bills than his 1996 income tax return indicated.
Doreen contends that the amounts of $37,647 and $52,895 constituted earned income that David did not report on his income tax returns for 1995 and 1996, respectively. However, Bosse's testimony does not support that contention.
Initially, Bosse never expressly stated that these amounts constituted earned income that David had failed to report on his income tax returns for 1995 and 1996. Even if we assume that Bosse was implying that the amounts represented unreported, taxable income, his testimony was insufficient to prove that contention. Bosse repeatedly emphasized throughout his testimony that in analyzing David's income tax returns and business records, he was not distinguishing between taxable and non-taxable income. Instead, he was merely trying to determine the amount of cash David had available to pay bills. Bosse never explained why comparing the amount of "cash available to pay bills," as reflected in David's income tax returns, to the amount reflected in his business records for the same year would provide a reliable indicator of the amount of income that David had failed to report on his income tax returns, particularly where the figures Bosse used did not differentiate between cash coming from taxable income and cash coming from non-taxable income. At best, Bosse's testimony raises suspicions that David may have understated his income for 1995 and 1996. Nevertheless, Bosse's testimony failed to provide the trial court with sufficient evidence for a reliable determination of the actual amount by which David understated his earnings for those years. Consequently, the trial court was justified in disregarding Doreen's numbers concerning David's income.
Doreen also points to several specific facts that, she alleges, demonstrate that David understated his income for the 1996 tax year. For example, she asserts that David concealed earnings for the 1996 tax year by prepaying his 1997 lease expense for his barn in the later part of 1996, and by storing, rather than selling, $21,600 worth of corn for future sale. In support of these claims, Doreen cites David's February 5, 1997 deposition. However, David's deposition was never filed in the trial court, nor formally offered as an exhibit at the hearings.[1]
Several pages of that deposition were attached to Doreen's objections to the magistrate's decision, and have been attached to Doreen's appellate brief. Nevertheless, we cannot determine from this record whether the magistrate was ever provided with a copy of the deposition, or whether the trial court was ever provided with a complete copy of the deposition. This court has not been provided with a complete copy of the deposition. The trial court was not required to disregard the magistrate's decision on the basis of an incomplete deposition transcript, nor will we reverse the trial court under similar circumstances.[2] In light of the foregoing, Doreen cannot rely on David's deposition to support her arguments on appeal.
Doreen also contends that David decreased his 1996 earnings by giving his son, Jeremy 350 bushels of corn as a gift. Again, Doreen cites David's deposition in support of her contention. Nevertheless, it appears from the hearing transcript that the 350 bushels of corn may have been the same "truckload or two of corn" that David testified he gave Jeremy to pay him for work he performed for his father. At the hearing, David placed the value of the truckload of corn at $1,500. There was testimony that Jeremy worked regularly for his father, especially during the harvest season. David's act of paying Jeremy a reasonable amount of compensation for his work cannot be viewed as an attempt to conceal income.
Doreen argues that David also decreased his 1996 earnings by allowing Jeremy to farm 70 acres of land belonging to a nearby property owner, and to collect the profits from it. Doreen contends that if David had farmed the 70 acres himself, he could have earned as much as $10,000 in extra income. However, David testified that he permitted Jeremy to farm the 70 acres rather than farming it himself, as a way of paying Jeremy for his work. David testified that he paid for such things as the equipment to help Jeremy farm the 70 acres of land. More importantly, David's arrangement with Jeremy regarding the 70 acres took place in 1998, not 1996. Thus, it did nothing to decrease David's 1996 income.
Doreen further argues that it would be "illogical and unreasonable" to assume that David could have supported himself and his son on only $2,273 in earnings in 1996, particularly, since he paid $4,332 in child support that same year. However, David testified that he paid for his expenses in 1996 by using monies from his operating loan from that year of approximately $56,000.
Arguing in the alternative, Doreen asserts that the trial court erred by averaging David's income for a period of only two years for purposes of calculating child support, where David's income for one of the years used in the average (1996) was an aberration. We agree.
Line 1a of the child support worksheet set forth in R.C.3113.215 requires the listing of both parents' "[a]nnual gross income from employment or, when determined to be appropriate by the court * * *, average annual gross income from employment over a reasonable period of years [excluding overtime and bonuses]." The questions of whether to use an average of a parent's income over a number of years (rather than simply the latest tax year for which information is available), and the number of years over which the parent's income should be averaged are questions the trial court must determine with reference to the facts and circumstances of each case. The trial court's determination of these issues will not be overturned on appeal unless the trial court's determination constitutes an abuse of discretion. SeeMallin, supra.
Here, David's income for 1995 and 1996 was $28,092 and $2,273, respectively, after depreciation was added back in. The magistrate used the average for those two years, $15,182.50, to calculate the parties' child support obligations. This decision was unreasonable in light of the fact that David's income for 1996 was substantially unrepresentative of his usual annual income. David testified that his income for 1993 and 1994 was $16,426 and $24,396 respectively. David also estimated his 1997 income to be $12,000 to $13,000. As can be seen from these numbers, David's 1996 income was well below his normal annual earnings. Therefore, the trial court abused its discretion by averaging David's income over the two-year period of 1995 and 1996 for purposes of calculating child support. On remand, the trial court is directed to select a greater period of time over which to average David's income in order to arrive at a more representative figure regarding his annual income.
Accordingly, Doreen's First Assignment of Error is sustained to the extent indicated.
 III
Doreen's Second Assignment of Error states:
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN THE FIGURE WHICH WAS ADOPTED FOR APPELLEE'S ANNUAL COURT-ORDERED SUPPORT PAID FOR OTHER CHILDREN.
Doreen argues that the trial court erred in determining David's income for purposes of calculating child support, because at approximately the same time the magistrate determined that David's annual income was $15,182.50 for purposes of calculating child support for their children, that same magistrate, in a different child support modification proceeding brought against David by his other former wife, Jodi M. Kremer, determined David's annual income to be $23,899 for purposes of calculating child support. We disagree.
Both sides agree that the income figure utilized in calculating the amount of child support owed by David with respect to his and Kremer's child arose out of an agreement between those two parties. We do not know from this record how David and Kremer reached agreement on this figure. For instance, David may have agreed to the $23,899 figure in exchange for other concessions by Kremer. In any event, the trial court correctly limited itself to the facts as litigated by the parties in the proceedings held before it, especially since the income figure arrived at in this case was taken from the 1995 to 1996 period, whereas the income figure in the Kremer case was taken from around 1998.
Doreen also claims that the trial court erred in upholding the magistrate's decision finding that David's child support obligation for his other child from his marriage to Kremer was $294.79 per month or $3,537 per year, when a copy of the magistrate's decision and order from the case involving David and Kremer ordered him to pay only $224.45 per month or $2,693.40 per year in child support. We agree.
Following this court's dismissal of Doreen's initial appeal in June, 1999, the trial court ordered the parties to submit information on their costs for providing health insurance coverage for the children, and ordered David to provide information regarding his child support obligation for his child from his other former marriage in order to complete a more accurate child support worksheet. No hearing was held on these issues. Instead, the trial court ordered the parties to submit this information in affidavit form.
When Doreen filed her objection to the magistrate's decision which had accepted David's assertion in his affidavit that his child support obligation for his other child was $294.79 per month, she attached to her objections a copy of the magistrate's decision and order involving David's other child. That document indicated that David's child support obligation for his other child was only $224.45 per month. However, the document also indicated that with poundage, David's weekly payment was $52.83. The document further indicated that David is required to pay $10 per week for an arrearage with in his support obligation for his other child. Thus, it appears that most of the difference between the number stated in David's affidavit and the number Doreen proposes is a result of Doreen's failure to take into account poundage and the ten dollars per week in arrearage that David was ordered to pay for his other child. However, even when poundage and the arrearage are taken into account, there is still a difference of about $270 per year that favors David.
The trial court overruled Doreen's objection apparently on the ground that no transcript had been presented. However, since the trial court ordered the parties to submit the matter on affidavits, there was no reason for a transcript to have been prepared. Once the trial court received evidence that David's affidavit may have been inaccurate, it should have remanded the matter to the magistrate to make a determination as to the accuracy of David's affidavit, or otherwise permitted the parties to be heard concerning this disputed fact.
For his part, David filed no response to Doreen's objections. On appeal, David represents that he submitted four documents to the trial court indicating that his weekly payment for his other child was $68.03, which, multiplied by 52 (weeks) and divided by 12 (months), equals a monthly payment of $294.79, the amount of his monthly child support payments stated in his affidavit. However, the record on appeal does not contain the four documents to which David refers, and a party's representations in his appellate brief cannot be considered as evidence. See, e.g.,Benham v. Mitchell (1989), 65 Ohio App.3d 374, 376 (appellate court will not consider factual statement made by parties in their briefs as evidence if basis for factual statement is not included in record). Therefore, on remand, the trial court is instructed to determine the accuracy of David's affidavit with respect to his child support payments for his child from his marriage to Kremer.
Accordingly, Doreen's Second Assignment of Error is sustained to the extent indicated.
 IV
Doreen's First and Second Assignments of Error having been sustained to the extent indicated, the judgment of the trial court is Reversed, and this cause is Remanded for proceedings consistent with this opinion.
 ____________________ FAIN, J.
BROGAN and WOLFF, JJ., concur.
[1] David's appellate brief states that depositions were submitted to the trial court, but he does not specify which ones.
[2] For example, one of Doreen's contentions is that David made the annual lease payment on his barn twice in 1996 to conceal income that year. A page of the deposition attached to Doreen's objections to the magistrate's decision and her appellate brief does indicate that David made two lease payments on the barn in 1996. It appears that David did this because his barn burned down in 1995. However, the same page from the deposition also indicates that the first payment was only for half of the lease payment. The page then ends, and the next page was not included.