DECISION AND JUDGMENT ENTRY
{¶ 1} In this divorce action, Tamara L. Jones appeals the trial court's property division. Ms. Jones argues the trial court erred by failing to award her the marital residence as her separate property where the evidence clearly demonstrates that she used her separate funds to purchase it. The trial court concluded the home was not separate property because Ms. Jones made a gift of an undivided one-half interest in the real estate to Mr. Jones. Because Mr. Jones testified he and his wife each agreed to contribute their respective separate property to buy the home and the deed is in both their names, there is some evidence that Ms. Jones had the donative intent to make a gift. Thus, we affirm the trial court's decision.
 {¶ 2} Ms. Jones also asserts that the trial court erred by allowing Mr. Jones to offset his child support against the $13,696.32 property division or by *Page 2 
ordering her to sell the residence in order to effectuate the property division. Because a trial court's authority to set off one judgment against another involving the same parties is a well established equitable principle, the court did not abuse its discretion by crediting Mr. Jones's child support obligation against the property division. And, contrary to Ms. Jones's argument, the trial court possessed statutory authority to order the residence sold in order to effectuate the property division. Accordingly, we overrule Ms. Jones's second assignment of error.
 I. FACTS {¶ 3} The parties married in 1998 and at the time, lived in Mesquite, Texas, in a home that Mr. Jones inherited from his mother. During the marriage, the parties borrowed $67,500 against the home. They used some of the money to maintain the house and used the rest (1) to purchase new furniture, an above-ground pool, and a vacation, (2) to pay off credit card debt incurred during the marriage, and (3) to pay living expenses. The parties sold the house in 2003 and netted $10,846.08. Mr. Jones used almost $4,000 to purchase a motorcycle. Ms. Jones managed the parties' finances and placed the rest of the money in a joint bank account to use for living expenses.
 {¶ 4} In 2002, Ms. Jones inherited $20,891.67 upon her mother's death. She placed most of this money in a separate bank account. She also inherited a mobile home, which she sold and netted $9,000. The parties used the $9,000 for living expenses.
 {¶ 5} Later in 2002, Ms. Jones decided that she wanted to move to Glouster, Ohio, to be close to family. The parties purchased a house for *Page 3 
$25,000. Ms. Jones used $20,000 from her separate bank account to purchase the house. Her father loaned her the rest of the money. Both parties signed the purchase agreement and the deed bears both parties' names. Mr. Jones believed that Ms. Jones used some of the equity money from the Mesquite home to purchase the Glouster property. He did not learn otherwise until after the divorce proceedings began in 2004.
 {¶ 6} At the divorce hearing, Mr. Jones indicated the parties had agreed to use their respective separate property for marital purposes. The following discussion occurred:
 "Q: Do you recall that, in fact, the house was bought with Tammy's inheritance money?
 A: That was the agreement that we made.
 Q: Okay I just want to understand though. The house was purchased with money she had from her inheritance.
 A: We made a deal.
 Q: I'm not talking about the deal. The money that was paid to buy the house, came from her inheritance.
 A: That's right.
 Q: My understanding you claim you own half of that, or you're entitled to half of that?
 A: Yes I do.
 Q: I see.
 A: I put seventy-seven thousand dollars from my inheritance into that marriage.
 Q: You put it into the marriage, but you didn't put it into an asset. *Page 4 
 A. We put it, I borrowed, she made the agreement, the loan, thirty thousand dollars right before we moved up here in June. She made the deal so we could have money to survive on and she was going to use that money to buy the house, but now I can see what she was doing."
 {¶ 7} He later explained that the "agreement" or "deal" between the parties was that "she would take [her $20,000] and pay for the house that we was [sic] going to buy and for me to get a loan for us to live on and to move with." Mr. Jones stated that Ms. Jones handled the parties' finances and he assumed that she would follow through with the parties' agreement.
 {¶ 8} Ms. Jones stated that she used $20,000 of her inheritance to purchase the residence and that her father wrote a check for the remaining $5,000 of the purchase price. Thus, she claimed the home was her separate property.
 {¶ 9} The magistrate subsequently determined that the Glouster home constituted marital property. She stated: "[Ms. Jones] argues that the marital residence is her separate property, because it was purchased, primarily, with inherited funds that went from a separate bank account to the seller of the property. However, it was [Ms. Jones] that managed the family finances. To allow her to manipulate the monies in such [a] way as to trace the parties' only significant asset back to her inheritance while spending all of [Mr. Jones's] money on living expenses, personal property, vacations, etc. * * * would be grossly inequitable." The magistrate awarded Mr. Jones $13,696.32 as his interest in the real estate. But the magistrate allowed him to offset his child support obligation against this amount because Ms. Jones lacked the present ability to pay him for his interest without selling the residence. *Page 5 
 {¶ 10} Ms. Jones objected to the magistrate's decision. She asserted that the magistrate improperly found "that the residence at 5 Morgan Street, Glouster was transmuted into marital property." She argued that she used separate property to purchase the home and that it had not lost its separate nature. She also objected to the magistrate's decision that Mr. Jones be permitted to offset his child support obligation against the property settlement Ms. Jones purportedly owes him.
 {¶ 11} Mr. Jones argued that Ms. Jones commingled her separate property by placing the residence in both parties' names. He pointed out that Ms. Jones was in charge of the family finances and placed her separate property in a separate account, while placing Mr. Jones's property into an account that she used to help pay marital expenses.
 {¶ 12} The trial court overruled Ms. Jones's objection regarding the Glouster residence. The court found that although Ms. Jones deposited the inherited money into a separate checking account to purchase the marital residence, Mr. Jones stated that the parties had agreed that the inheritance would be deposited into a joint fund used to benefit the family. The court noted that both parties signed the real estate purchase contract and that the deed was titled in both names. The court thus determined that Mr. Jones proved by clear and convincing evidence that Ms. Jones "made a gift of an undivided one half interest in the real estate."
 {¶ 13} The court partially agreed with Ms. Jones's objection regarding the set-off. The court determined that to achieve the property settlement "the Court's *Page 6 
option is to order the house sold so that [Mr. Jones] can be awarded [Ms. Jones's] share of the property settlement. The court thus allowed Ms. Jones to choose one of three options: (1) place the residence for sale; (2) "[o]rder [Mr. Jones] to pay child support to [Ms. Jones] and order [Ms. Jones] to pay [Mr. Jones] the same amount per month in property settlement"; or (3) "[a]gree to the Magistrate's off-set against [Mr. Jones's] child support obligation." Ms. Jones chose to place the residence for sale.
 {¶ 14} After the court granted the parties a divorce, Ms. Jones filed this appeal.
 II. ASSIGNMENTS OF ERROR {¶ 15} Ms. Jones raises the following assignments of error:
 First Assignment of Error: The trial court committed prejudicial error when it failed to credit appellant's traceable separate property and the property division between the parties in accordance with R.C. 3105.171.
 Second Assignment of Error: The trial court committed prejudicial error when it required appellant to sell her home or repay appellee for property division by crediting his child support payments against the property division debt owed to appellee.
 III. MARITAL OR SEPARATE PROPERTY {¶ 16} In her first assignment of error, Ms. Jones argues that the trial court improperly concluded that Mr. Jones was entitled to one-half the value of the Glouster residence as a result of a gift. She alleges that the residence constitutes her separate property and that the trial court should have distributed it to her alone. *Page 7 
 A. Standard of Review {¶ 17} Two standards of review apply in this matter. First, because a trial court has broad discretion when dividing property in a domestic case, we apply an abuse-of-discretion standard of review to the trial court's distribution of the parties' property, such as ordering the sale of a marital asset. See Middendorf v. Middendorf (1998),82 Ohio St.3d 397, 401, 696 N.E.2d 575; Martin v. Martin (1985), 18 Ohio St.3d 292,294-295, 480 N.E.2d 1112. An abuse of discretion is more than a mere error of judgment; it implies that the court's attitude is arbitrary, unreasonable or unconscionable. See, e.g., Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 18} Second, because the trial court's conclusion concerning the existence of a gift involves a factual inquiry, we review its characterization under a manifest-weight-of-the-evidence standard. We will not reverse a trial court's decision as being against the manifest weight of the evidence, if some competent, credible evidence supports it. See, e.g., C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus; Eddy v. Eddy, Washington App. No. 01CA20, 2002-Ohio-4345, at ¶ 27. This standard of review is highly deferential and even "some" evidence is sufficient to sustain the judgment and prevent a reversal. Eddy. Moreover, a reviewing court should presume that the trial court's findings are correct, since the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the *Page 8 
testimony. See, e.g., In re Jane Doe I (1991), 57 Ohio St.3d 135,566 N.E.2d 1181.
 B. Property Division {¶ 19} In a divorce proceeding, "the court shall divide the marital and separate property equitably." R.C. 3105.171(B). Normally, this means that the court should award each spouse his or her separate property and then distribute the marital estate equally, unless an equal division would be inequitable. See R.C. 3105.171(C) and (D); Barkley v.Barkley (1997), 119 Ohio App.3d 155, 159, 694 N.E.2d 989. If the court does not award a spouse his or her separate property, the court must issue findings of fact that explain the factors it considered in determining that the spouse should not receive that separate property. See R.C. 3105.171(D).
 C. Property Classification {¶ 20} Before a trial court divides property in a domestic proceeding, it must classify the property as marital or separate. R.C. 3105.171(B). Marital property includes all real property that currently is owned by either or both of the spouses and that was acquired by either or both of the spouses during the marriage. R.C. 3105.171(A)(3)(a)(i); see, e.g.,Hurte v. Hurte, 164 Ohio App.3d 446, 2005-Ohio-5967, 842 N.E.2d 1058, at ¶ 21. Property acquired during the marriage is presumed to be marital property, unless it is shown to be separate property. Hurte; Measor v.Measor, 160 Ohio App.3d 60, 2005-Ohio-1417, 825 N.E.2d 1169, at ¶ 10;Barkley, 119 Ohio App.3d at 160. *Page 9 
 {¶ 21} Separate property generally includes an inheritance during the marriage by one spouse by bequest, devise, or descent. R.C.3105.171(A)(6)(i). Separate property is presumed to retain its separate nature as long as it is traceable, regardless of whether it has been commingled with other property. Barkley, 119 Ohio App.3d at 160; see, also, R.C. 3105.171(A)(6)(b). Thus, when one spouse contributes equity in the parties' marital home and that spouse can trace the equity to his or her pre-marital funds, those funds remain the spouse's separate property. See Moore v. Moore (Feb. 13, 2001), Brown App. No. CA200-03-006. "The party seeking to establish an asset or a portion of it as their own separate property has the burden of proof, ordinarily by a preponderance of the evidence, to trace the asset to the separate property source." Hurte, at ¶ 21, citing Eddy v. Eddy, Washington App. No. 01CA20, 2002-Ohio-4345, and Knight v. Knight (June 11, 2001), Washington App. No. 00CA38; see, also, Dunham v. Dunham,171 Ohio App.3d 147, 2007-Ohio-1167, 870 N.E.2d 168, at ¶ 20.
 {¶ 22} Holding property in co-ownership with a spouse is not determinative of whether property is separate or marital. Nonetheless, a spouse may convert separate property into marital property by making an inter vivos gift. See Barkley v. Barkley (1997), 119 Ohio App.3d 155,160, and Helton v. Helton (1996), 114 Ohio App.3d 683, 685,683 N.E.2d 1157. "[A]n inter vivos gift is an immediate, voluntary, gratuitous and irrevocable transfer of property by a competent donor to another."Smith v. Shafer (1993), 89 Ohio App.3d 181, 183, 623 N.E.2d 1261. The donee-spouse bears the burden of proving by clear and convincing evidence that (1) the donor intended to make an immediate gift, (2) the donor delivered the *Page 10 
property to the donee, and (3) the donee accepted the gift. SeeBolles v. Toledo Trust Co. (1936), 132 Ohio St. 21, 4 N.E.2d 917, paragraph one of the syllabus; see, also, In re Fife's Estate (1956),164 Ohio St. 449, 456, 132 N.E.2d 185; Ervin v. Ervin, Adams App. No. 06CA822, 2006-Ohio-5460, at ¶ 13 and ¶ 15. "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations [or issues] sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt * * *." Cross v.Ledford (1954), 161 Ohio St. 469, 477; see, also, Ervin, at ¶ 13. The existence of an inter vivos gift presents a question of fact that we review under a deferential manifest-weight-of-the-evidence standard even though the burden of proof is clear and convincing. See Ervin, at ¶ 14, citing Wheeler v. Martin, Washington App. No. 04CA15, 2004-Ohio-6936, at ¶ 16.
 {¶ 23} Here, the magistrate determined that Ms. Jones used separate property to purchase the Glouster residence. However, the magistrate concluded that it would not be equitable to award Ms. Jones the house as her separate property. The magistrate noted that Mr. Jones had used his separate property to further the parties' marital interests, such as paying for furniture, a vacation, and living expenses. The magistrate thus found that the residence constituted marital property. The trial court rejected this analysis but determined that Ms. Jones gifted Mr. Jones a one-half interest in the property. We believe the weight of the evidence supports the trial court's conclusion. *Page 11 
 {¶ 24} Here Mr. Jones testified the parties agreed to use their respective separate property for marital purposes, including buying the home. In effect, they agree these separate assets would be considered marital property or "gifted" to the marriage. While Ms. Jones may dispute the existence of such an agreement, the trial court was free to believe Mr. Jones's testimony about its existence. And, when combined with the joint ownership in the deed, we believe there is enough evidence to support the trial court's implicit conclusion of donative intent by Ms. Jones. The fact that she may have changed her mind later did not render the gift invalid as it became effective and irrevocable upon delivery and acceptance by Mr. Jones. Helton v. Helton (1996),114 Ohio App.3d 683, 686. Accordingly, we reject Ms. Jones's first assignment of error.
 IV. SET-OFF {¶ 25} In her second assignment of error, Ms. Jones argues that the trial court erred by requiring her to choose between selling the residence or allowing Mr. Jones to offset his child support obligation against the court's property division of $13,696.32. She claims that a trial court lacks the authority to offset current child support against a property division.
 {¶ 26} "A trial court's authority to set off one judgment against another involving the same parties is a well-established equitable principle. Barbour v. National Exchange Bank (1893), 50 Ohio St. 90, 98,33 N.E. 542, 544." Krause v. Krause (1987), 35 Ohio App.3d 18, 19,518 N.E.2d 1221 (approving the trial court's decision that offset the wife's child support obligation against the husband's arrearages). A trial court has discretion to set off the parties' *Page 12 
judgments, and a reviewing court will not disturb its decision absent an abuse of discretion. Id.
 {¶ 27} In Marshall v. Marshall, Lawrence App. No. 06CA9,2007-Ohio-3041, we considered a similar argument to the one Ms. Jones raises and concluded that the trial court did not abuse its discretion by allowing an offset against an ongoing child support obligation. In that case, the wife owed the husband for unreimbursed medical expenses for the children, and the trial court ordered that the amount be offset against the husband's future child support obligation.
 {¶ 28} Similarly, here, the trial court did not abuse its discretion by offsetting Mr. Jones's future child support obligations against the property division. Ms. Jones received an award of child support, while Mr. Jones received a monetary property award. Because Ms. Jones lacked the funds to outright pay Mr. Jones the property award, the court chose to offset his child support obligation. Because this case involves the same parties and contemporaneous judgments, the trial court had the discretion to set off one judgment against the other. SeeBarbour, supra, and Krause, supra.
 {¶ 29} The cases Ms. Jones cites are inapposite. Both involved post-decree actions in which the trial court attempted to offset a current child support obligation against a prior property division. InMallin, for example, the court stated that "[s]ince that part of the divorce decree was a division of property, the court lacked continuing jurisdiction to modify this division of marital assets." Mallin v.Mallin (1995), 102 Ohio App.3d 717, 725, 657 N.E.2d 856. The court *Page 13 
likewise held in Gerrick v. Gerrick (Sept. 24, 1998), Cuyahoga App. No. 73835, that the court could not offset a current child support obligation against a prior property settlement award. In contrast, the case at bar does not involve a prior property division that the parties are attempting to modify through an offset of a current child support obligation. Rather, this case concerns a current and contemporaneous child support obligation and a current and contemporaneous property division. No one is seeking a modification of a prior property division. Therefore, Mallin and Gerrick are not persuasive.
 {¶ 30} Ms. Jones alternatively asserts that the trial court lacked authority to require her to sell the residence in order to satisfy the judgment. It is well-settled that a trial court may order any real property to be sold in order to effectuate a property division. See R.C.3105.171(J)(2). The court therefore possessed authority to order the property sold. Thus, Ms. Jones's argument to the contrary is meritless.
 {¶ 31} Accordingly, we overrule Ms. Jones's second assignment of error.
 JUDGMENT AFFIRMED. *Page 14 
 JUDGMENT ENTRY
It is ordered that the trial court's JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 Abele, P.J. Kline, J.: Concur in Judgment and Opinion. *Page 1