DECISION AND JUDGMENT ENTRY
{¶ 1} Petitioner-appellant, Debra K. Lloyd, nka Marshall, appeals from an order of the Lawrence County Court of Common Pleas, Division of Domestic Relations, in post-decree proceedings arising from the dissolution of appellant's marriage with petitioner-appellee, William T. Marshall.
 {¶ 2} The parties were married in 1984 and have three children: William T. ("Ty") Marshall, II, born May 2, 1986; Kaylin N. Marshall, born May 20,1989; and Angela M. Marshall, born March 28, 1999. The parties filed cross-petitions for dissolution leading to a decree of dissolution entered May 15, 2000. The decree incorporated the terms of a separation agreement entered into between the parties providing for child custody and *Page 2 
support as well as allocation of the parties' assets and liabilities. Most pertinently, the decree designated appellant as residential parent of all three children and granted her the right to occupy the former marital residence in the near term. The agreement also reflected the intent of the parties to proceed with the sale of this home, however, and called for appellee to make the mortgage payments until it was sold. In consideration of this, appellant waived payments of child support by appellee. The agreement provided that upon the sale of the marital residence, appellee's child support obligation would commence in an amount to be determined under statutory guidelines.
 {¶ 3} Despite the apparent agreement of the parties that the marital residence would be sold in relatively short order, this did not occur. In light of this and other changes in the parties' respective situations, the parties proceeded to modify the terms of the separation agreement by means of a series of agreed entries in the trial court. On January 12, 2001, the court journalized an entry making appellee the residential parent for the parties' son, Ty. On November 21, 2001, another agreed order set forth that appellant would vacate the marital dwelling, appellee would take possession thereof, and appellee would pay child support in the amount of $ 300 a month, to be re-adjusted after one year or sale of the marital residence. Despite passage of a year and non-sale of the house, the parties have never specifically moved to modify child support based upon this order.
 {¶ 4} Instead, the parties undertook yet another modification of parenting and payment obligations through an agreed entry dated August 18, 2004. This entry returned Ty to custody of his mother, made appellee the residential parent for school placement *Page 3 
purposes for the youngest child, Angela, and set child support at $ 800 a month payable by appellee to appellant.
 {¶ 5} The parties did not remain in agreement for long, and filed cross-motions for contempt on August 23, 2005 and September 29, 2005 respectively. Appellant's three-branch motion sought a finding that appellee be held in contempt for failure to pay child support according to the August 18, 2004 agreed entry, that child support be re-computed pursuant to statutory guidelines and be paid through the county child support enforcement agency, and that appellant be named the residential parent for school placement purposes for Angela in order to effect Angela's transfer from the Wheelersburg school system associated with appellee's residence to appellant's new residence in the Oak Hill schools. Appellee responded with a four-part motion seeking full custody of Angela, a contempt finding against appellant for failure to notify appellee of her multiple address changes, a contempt finding against appellant for failure to pay one-half of unreimbursed medical bills for the children, and a finding of contempt against appellant due to an alleged failure to provide companionship and visitation as agreed.
 {¶ 6} The motions proceeded to an extensive two-day hearing at which the court heard lengthy testimony and received documentary evidence. On January 20, 2006, the court rendered its decision, the most significant aspect of which was a change in residential parent placement for Angela from appellant to appellee. The court set child support payable from appellee to appellant in the amount of $ 405.81 per month plus poundage, to be paid through the Lawrence County Child Support Enforcement Agency. The court further found that appellee had presented sufficient evidence that appellant owed him the sum of $ 2,904.20 for payment of one-half of his unreimbursed medical *Page 4 
expenses for the children, and the court ordered that this amount be offset against future child support payments by appellee. The court declined to find either party in contempt, finding that appellant had sufficiently informed appellee of her changes of address, and that even in instances in which appellant had not specifically informed appellee of these changes, he was nonetheless aware at all times of her different residences. The court further found that appellee had paid all child support in the amount and manner set forth in the August 18, 2004 agreed entry.
 {¶ 7} Appellant has timely appealed and brings the following assignments of error:
 [1.] THE TRIAL COURT ERRED IN IGNORING THE TERMS OF THE SEPARATION AGREEMENT ENTERED INTO BY THE PARTIES.
 [2] THE TRIAL COURT ERRED IN ITS ARBITRARY FINDING THAT A CHANGE IN CIRCUMSTANCES OCCURRED TO JUSTIFY A CHANGE IN DESIGNATION OF RESIDENTIAL PARENT.
 [3] THE TRIAL COURT ERRED IN DETERMINING THAT THE SUMS PAID BY APPELLEE MARSHALL CONSTITUTED CHILD SUPPORT AND IN MAKING ITS CHILD SUPPORT AWARD.
 [4] THE TRIAL COURT DEONSTRATED BIAS IN FAVOR OF APPELLEE MR. [JUDGE] WILIAM MARSHALL, THE FATHER, SUCH THAT THE COURT'S DETERMINATIONS AS TO PROPER DESIGNATION OF RESIDENTIAL PARENT, CHILD SUPPORT PAYMENTS AND PAYMENT OF MEDICAL BILLS MUST BE FOUND TO BE PREJUDICIAL ERROR AND ABUSE OF DISCRETION.
 {¶ 8} Appellant's first assignment of error asserts that the trial court erred in failing to properly give weight to the terms of the separation agreement entered into between the parties. We find that this assertion is without merit. Although the original *Page 5 
terms agreed to by the parties for custody and care of the children are of course significant in this case, they were not ignored by the trial court. The court, rather, considered these in conjunction with three subsequent agreed entries submitted by the parties to the court, which the court could only presume to represent the valid judicial expression of freely agreed-to modifications of the original agreement's terms to suit the parties' changed circumstances. No Civ.R. 60(B) motion for relief from judgment has been taken by appellant from either the original decree of dissolution incorporating the separation agreement or any of the three subsequent agreed entries. The trial court appropriately in this case considered all terms agreed to by the parties or imposed by prior judgments, and did not give weight to those aspects of the original separation agreement that are superseded by subsequent actions of the court and parties. We accordingly find that appellant's first assignment of error is without merit and is overruled.
 {¶ 9} Appellant's second assignment of error asserts that the trial court erred in awarding custody of the couple's youngest daughter, Angela, to appellee. A trial court, when considering a change of child custody, follows a two-step approach. First, the court must ascertain whether there has been a change in the circumstances of the parents and the child or children. Putnam v. Putnam, Washington App. No. 00CA32, 2001-Ohio-2471. While the change in circumstances need not be "substantial," Davis v. Flickinger (1997), 77 Ohio St.3d 415, 417, the change must be more than trivial or inconsequential. Id. at 418. Once the court determines that there has been a change in circumstances, the inquiry turns to whether the requested modification is in the best interest of children. Putnam, supra; Alessio v. Alessio, Franklin App. No. 05AP-988, 2006-Ohio-2447, at ¶ 16. In doing so, the court will review factors set forth in R.C. 3109.04(F)(1). Id. *Page 6 
 {¶ 10} Once the trial court has determined that a change in allocation of custody is warranted by a change in circumstances and the best interest of the children, that decision will not be reversed absent a showing that the trial court abused its discretion. Miller v.Miller (1988), 37 Ohio St.3d 71; Pen v. Perz (1993), 85 Ohio App.3d 374. The term "abuse of discretion" connotes more than a mere error of law or judgment, but implies that a decision is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. Long-standing precedent in Ohio establishes that it is particularly important to allow deference to the decision of the trial court in proceedings involving the custody and welfare of children, because the knowledge obtained through contact with and observation of the parties and witnesses cannot adequately be conveyed to a reviewing court by the printed record. Trickey v. Trickey (1952), 158 Ohio St. 9. Accordingly, an appellate court may not substitute its judgment for that of the trial court where an award of custody is supported by substantial, credible, and competent evidence. Bechtol v. Bechtol (1990), 49 Ohio St.3d 21;Swain v. Swain, Pike App. No. 05CA740, 2005-Ohio-4321. Where the record contains conflicting evidence that would permit reasonable minds to reach different conclusions of fact, the decision of the trier of fact should be affirmed. Swanson v. Swanson (1976), 48 Ohio App.2d 85.
 {¶ 11} In the present case, appellant was given primary custody of Angela under the May 2000 decree of dissolution. The subsequent modification embodied in the agreed entry of August 18, 2004 made appellee the residential parent for school placement purposes. The parties' respective motions sought to change each of these allocations of parental rights and responsibilities. For the change in primary custody, the relevant period to examine for a change of circumstances falls between the original *Page 7 
allocation of custody in May 2000 and the time of the hearing from which the present appeal is taken. For the change of residence for school placement purposes, however, the relevant period falls only between the last modification in August 2004 and the day of the most recent hearing.
 {¶ 12} Although the trial court appears to have indicated that it was relying only on evidence covering circumstances after the more recent date, it clearly considered evidence going back to the earlier, initial allocation of custody, and we find that the trial court could properly consider this evidence. Based on these observations, we find that appellant's initial argument on this issue, under which appellant asserts that the trial court improperly used the date of the August 18, 2004 order as the time from which a change in circumstances should be determined, is not well-taken, since the relevant evidence for prior periods was in fact considered by the court at least as far back as the initial decree of dissolution in May 2000, which represented the initial determination of residential custody for Angela that was still in effect at the time of the latest hearing.
 {¶ 13} In assessing this evidence, the trial court considered multiple changes in the circumstances of the parties. Both parents had remarried, appellee had moved once into the former marital residence, and appellant had moved several times, cohabitating with two boyfriends before moving in with her eventual husband. Most significantly, appellant changed jobs, leaving the medical office where she worked near Angela's grade school in Wheelersburg to take a contract nursing position with a medical center in Gallipolis. The new job allows appellant to work fewer but longer shifts each week and pays approximately the same as her former position in Wheelersburg. *Page 8 
 {¶ 14} Although the testimony on some aspects of Angela's care and custody was in conflict, there was credible testimony from appellee, corroborated in many respects from appellant's witnesses, that from the time appellee moved back into the marital residence in 2003 until the filing of the current motions leading to this appeal, appellee assumed a much bigger role in Angela's daily care. Because appellant worked in the area, she would drop off Angela to appellee in the morning and pick her up in the evening on most weekdays, and appellee had the duty of preparing Angela for daycare and caring for her and feeding her in the evening. Much of the time Angela would wind up staying overnight with her father as well. In addition, appellee received the standard alternate-weekend visitation provided under the separation agreement. Subsequently, appellant unilaterally attempted to enroll Angela in the Oak Hill school system, near appellant's new residence with her husband, and appellee's time with Angela was cut back to something approximating the alternate-weekends and Wednesday night provided for under local rule standard visitation practices and the parties' separation agreement.
 {¶ 15} Appellant's principal argument on appeal is that the trial court improperly found a change of circumstances where none existed; that is, that appellee's current time with Angela fully complies with the original arrangement and separation agreement, and no change of circumstances as measured against the original terms of the decree can be shown. This approach, however, would unduly limit the scope of the trial court's inquiry into the child's circumstances and best interest. The trial court properly found that the much-increased time that appellee spent with his daughter during the period when she was dropped off on a daily basis before school and he picked her up after school, combined with much more frequent overnight stays at his home, had altered the *Page 9 
circumstances under which the parties originally contemplated sharing the parenting of Angela. In addition, the court noted that the relationship between the parties had deteriorated, and the testimony of their older daughter, Kaylin, corroborated that she had, since her parents came into conflict, become antagonistic toward her father and taken her mother's side in the controversy.
 {¶ 16} The court further noted that testimony from appellant was seriously fraught with credibility issues. Twice appellant had to be coaxed on the stand and reminded that she was under oath before she would admit clear facts in evidence regarding her older daughter Kaylin's recent behavior and medical circumstances. In addition, based upon the testimony and attitudes of the parties, the trial court concluded that appellee was more likely to respect any visitation agreement and custody arrangement between the parties than was appellant, due to her negative attitude toward appellee and the legal proceedings in general. The court particularly noted appellant's unilateral attempt to enroll Angela in Oak Hill schools in derogation of the prior agreed entry making appellee the residential parent for school placement purposes in Wheelersburg. All of these factors represented competent evidence upon which the court could rely.
 {¶ 17} We find that there was substantial, credible evidence before the trial court to establish a change of circumstances, both in the parties' living conditions and in the relationship between the parties, to support a change in primary custody from appellant to appellee for Angela. Having found a change in circumstances, there is also substantial, credible evidence that the change in custody is in the best interest of Angela, as it will allow her to remain in her current school system, continue to reside primarily in the familiarity of her father's home (the former marital residence), and best assure reliable *Page 10 
and regular visitation with her mother, since the trial court concluded, based upon its observation of the parties' demeanor and testimony, that appellee was more likely to facilitate a stable and reliable relationship with both parents. While both parties have remarried and their respective new spouses appear fond of Angela, and she is by all accounts comfortable with both, the trial court chose to give much credibility to appellee's testimony regarding relative willingness of the parties to accommodate each other's visitation companionship rights and responsibilities.
 {¶ 18} In summary, we find that there was substantial, credible evidence before the trial court supporting the trial court's order changing primary custody of Angela from appellant to appellee. It takes far more in an appeal of this nature than a mere argument that a different court might have found otherwise; our purpose on appeal is not to substitute our judgment for that of a trial court which is better situated to ascertain and weigh the facts. Our role, as stated above, is but to assess whether there has been an abuse of discretion based upon the record and the order rendered by the trial court. We find no such abuse of discretion in this case. Although the parties' testimony did conflict on multiple issues, the trial court was required to make credibility determinations where the evidence conflicted and did do so, and the evidence upon which it relied in doing so was competent and credible. We accordingly find the trial court did not err in awarding custody of Angela to appellee, and appellant's second assignment of error is overruled.
 {¶ 19} We now turn to appellant's third assignment of error, which asserts that the trial court erred in refusing to find appellee in contempt for failure to make child support payments as ordered under the August 18, 2004 entry. In addition, appellant argues under this assignment of error that the trial court erred in computing the amount owed by *Page 11 
appellant to appellee for the children's unreimbursed medical bills and in allowing a setoff of that amount against child support payable by appellee.
 {¶ 20} Initially, we must clarify the scope of the child support issues before this court on appeal. Appellant, in developing the facts in her appellate brief, stresses some child support issues predating the trial court's August 18, 2004 entry setting child support at $ 800 per month. This is beyond the scope of the motion heard in the trial court, as in her August 23, 2005 motion appellant sought a contempt finding based solely on non-compliance with the August 18, 2004 order.
 {¶ 21} The trial court's August 18, 2004 entry states that appellee shall pay appellant "$ 800.00 per month as and for maintenance beginning August [24,] 2004. Said payments shall be paid directly to Debra K. Marshall on or before the 5th day of each month." It is indisputable that, in ordering support payable directly from appellee to appellant rather than through the county child support enforcement agency through withholding from the payor's income as provided in R.C. 3121.44 and3121.45, the trial court order does not comply with applicable statutes. It is also indisputable that appellant has never sought relief from judgment on the basis that the August 18, 2004 entry was unlawful, despite its obvious non-compliance with R.C. 3121.44 and 3121.45, sought to have the order declared void through Civ. R. 60(B) proceedings, or otherwise attacked the validity of the order itself.
 {¶ 22} At the hearing before the trial court, the parties testified in general agreement that for some time after the August 18, 2004 entry, appellee paid the specified $ 800 a month support directly to appellant. At some point, the parties' son moved out of appellant's home and into the home of the son's girlfriend's parents. After this, appellee *Page 12 
paid $ 400 to appellant, $ 200 directly to their son, and $ 200 to the son's girlfriend's parents. Appellee asserted that appellant agreed to this arrangement. Appellant denied any such agreement or concession.
 {¶ 23} The argument before the trial court concerned whether appellee had simply taken upon himself, albeit with the consent of appellant, to divert part of his monthly payment directly to his son and the son's girlfriend's parents, who apparently were providing a home for the son. The trial court found appellee's testimony on this question credible, and concluded that, because appellant had consented to payment in derogation of the court support order, she could not now complain that appellee was not paying in compliance with that order.
 {¶ 24} On appeal, appellant now argues that appellee should be found in contempt on the basis that he never made creditable payments pursuant to the August 18, 2004 order because no payments were paid through the appropriate child support enforcement agency. As such, appellant points out, pursuant to R.C. 3121.45, any payments not made through the appropriate child support enforcement agency will not be considered payment of support under the pertinent support order and will be deemed a gift.
 {¶ 25} The difficulty with raising this argument on appeal lies not with its colorable merits on its face, but with the nature of the underlying proceedings in the trial court. Appellant's motion in the trial court was for contempt for non-compliance with the August 18, 2004 order. In making his payments directly to appellant, however, appellee was in fact complying with that order, which (erroneously, although that is not subject to review in this appeal) specified such direct payments rather than the statutorily-required payment through the child support enforcement agency. The only aspect of appellee's *Page 13 
conduct that was subject to contempt, therefore, lies in his payments to persons other than appellant of a portion of the child support during a portion of the period concerned. Given the trial court's assessment of the conflicting evidence before it under the clear and convincing standard required for contempt actions, it is difficult at this stage of the proceedings for us to determine that the trial court did not have before it competent, credible evidence in the form of appellee's clear testimony on this issue which supported the trial court's ultimate determination. In the context of a contempt motion, therefore, we find that the record does not support a finding of reversible error on this question, and the trial court did not err in failing to find appellee in contempt for non-compliance with the August 18, 2004 child support order.
 {¶ 26} We now turn to that aspect of the assignment of error which asserts that the trial court judgment awarding medical expenses reimbursement to appellee is not supported by sufficient evidence. Appellant does not dispute that under the original separation agreement, she was obligated to reimburse appellee for her share of uninsured medical expenses for the children. Appellee supported his claim for unreimbursed medical expenses by proffering separate summaries for his out-of-pocket medical expenditures for the children in 2003, 2004, and 2005. Appended for the summary for each year are the insurer's explanation-of-benefits ("EOB") forms for most of the claimed items, as well as a few actual invoices from providers. Appellee provided no further documents or oral testimony to support these expenses, apart from a brief explanation regarding the potential for confusion between his own expenses and those of his son, who shares the same full name, and that various EOBs thus bear the penciled *Page 14 
notation "Ty" to clarify who the patient was. Appellant did not present any countervailing evidence regarding the children's unreimbursed medical expenses.
 {¶ 27} Appellant now argues that the trial court relied exclusively upon the conclusory and unsupported summaries of appellee in reaching a definite dollar figure based only upon the vaguest and most speculative premises.
 {¶ 28} We have fully reviewed the three annual summaries and noted the following questionable aspects of this evidence.
 {¶ 29} The summary for 2003 contains 27 items numbered from 1 through 20 (some numbers are repeated). Item 12 is an EOB showing payment declined for an otherwise covered service due to incomplete provider information. There is no indication that this item was not resubmitted and eventually paid, and thus that this is in fact an unreimbursed expense. Item 20 gives the patient name as "William," indicating that this could be either appellee or his son, but unlike other claimed items does not bear the notation "Ty" to indicate that appellee specifically recalled this as a child-related expense.
 {¶ 30} The summary for 2004 contains 26 items numbered from 1 through 16. Item 11 is an $ 840 anesthesiologist's bill for Angela upon which the insurer refused payment due to incorrect coding. Item 13 reflects a successful resubmission of this expense and partial payment by the insurer, with a copay of $ 149.76. Appellee thus claims both the full provider charge and subsequent copay as expenses, despite the eventual payment by insurance of this item. Item 15 is a pre-treatment estimate for dental work for Ty, showing no dental insurance coverage and an expected patient cost of $ 1,653. It is difficult to conclude that a preliminary notice of denial of coverage constitutes substantiating evidence that the actual procedure was performed, and at the estimated price. Moreover, *Page 15 
on the corresponding document for this item the patient name is given as "Bill" with a date of birth of August 31, 1956, manifestly corresponding to appellee rather than his son.
 {¶ 31} The summary for 2005 contains 11 entries numbered from 1 through 9. Items 8 and 9, for $ 64.92 and $ 81.15 respectively, are duplicates covering the same medical expense for Angela on the same date from the same provider.
 {¶ 32} Summaries are not self-substantiating, and may be admitted only for the convenience of the court in assessing underlying admissible evidence. Evid. R. 1006; Heiser Bros. Co. v. Cleveland (1932),44 Ohio App. 560; First Natl. Bank of Marietta v. Roslovic Partners Inc., Franklin App. No. 03AP-332, 2004-Ohio-2717. Given the state of the supporting documents and the complete lack of verbal testimony to support these expenses, we are compelled to find that this aspect of the trial court's evidentiary findings is not supported by sufficient competent, credible evidence to be affirmed. Appellant's third assignment of error has merit with respect to the award of medical expense reimbursement from appellant to appellee, and we vacate that aspect of the trial court's judgment, remanding the matter to the trial court to either revisit the issue in further proceedings or enter a modified judgment denying appellant's claim for medical expenses entirely.
 {¶ 33} As the last prong of this assignment of error, we address appellant's contention that Ohio law prohibits a setoff against child support of the medical bills reimbursement owed by appellant to appellee. While this question is arguably mooted by our disposition of the medical expense issue, we nonetheless address it as it capable of arising again in this case upon remand. *Page 16 
 {¶ 34} Trial court decisions in allowing or denying credits on child support obligations rest within the sound discretion of the trial court.Sabo v. Sabo, Lorain App. No. 05CA008652, 2005-Ohio-5504. While such adjustments are more common in cases of lump-sum overpayments or underpayments, see Allen v. Allen, Franklin App. No. 04AP-1341,2005-Ohio-5993, the case of Jack v. Jack, 139 Ohio App.3d 814,2000-Ohio-2553, cited by appellant here, is not absolute authority that an offset against an ongoing child support obligation is contrary to law. We accordingly find that appellant has not demonstrated an abuse of discretion on the part of the trial court in this respect.
 {¶ 35} In summary, we find that the trial court did not err in finding that appellee was not in contempt of the prior support order. We find that the trial court did err, however, in its award of children's medical expenses payable by appellant to appellee, and that award is vacated. We find that the trial court did not err in offsetting these amounts against future child support, although that aspect of the judgment is now ineffective. Appellant's third assignment of error is accordingly overruled in part and sustained in part.
 {¶ 36} Appellant's fourth assignment of error simply asserts that the trial court's entire conduct of hearing demonstrates such bias and prejudice against appellant as to warrant reversal. In support of this assignment of error, appellant lists a number of instances in which the trial court resolved conflicting testimony in favor of appellee. While concededly in several instances the trial court went beyond simply giving credence to appellee over appellant's version of the facts and continued with some extrapolation generally regarding the reliability of appellant's testimony in toto, we find that a continuing poor assessment of a party's credibility is not per se prejudice against that party's position *Page 17 
in the case. This is particularly true when on two occasions, as here, the party in question must be coaxed on the stand to abandon a manifestly counterfactual position and admit the real state of affairs.
 {¶ 37} We have carefully reviewed the entire transcript of the motion hearing from which this appeal is taken. It simply contains no evidence of the sort of blatant and pervasive bias that appellant now alleges. In order to find an abuse of discretion on the part of the trial court, as is required in many of the issues raised in this appeal, we must find in the record more than merely a decision with which we would ourselves not have agreed, but rather the sort of pervasive passion, prejudice, and disregard for the law that simply does not exist in the present case. We accordingly find that appellant's fourth and final assignment of error is without merit and is overruled.
 {¶ 38} In accordance with the foregoing, appellant's first, second, and fourth assignments of error are overruled. Appellant's third assignment of error is overruled in part and sustained in part. The judgment of the Lawrence County Court of Common Pleas, Domestic Relations Division, is affirmed in part and reversed in part, and the matter is remanded for further proceedings in accordance with law and this decision.
 JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND CAUSE REMANDED. *Page 18 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED IN PART, REVERSED IN PART, AND THE CAUSE REMANDED to the trial court for further proceedings consistent with this opinion and that the Appellant recover of Appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court, Division of Domestic Relations, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Brown, J. and McGrath, J.: Concur in Judgment and Opinion.
Judges Petree, Brown and McGrath, from the Tenth Appellate District, sitting by assignment Of the Ohio Supreme Court in The Fourth Appellate District *Page 1